IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-00102-LTB

ULRICO VAZQUEZ RIVERA,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

_____

## ORDER
_____

Plaintiff, Ulrico Vazquez Rivera, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his March 2011 application for Social Security disability insurance benefits, claiming he became disabled on January 27, 2011. [Administrative Record ("AR") 136] The application was initially denied at the administrative level. [AR 84-97] An Administrative Law Judge ("ALJ") subsequently conducted a hearing on June 19, 2012, and issued a written ruling on July 23, 2012, denying Plaintiff's application on the basis that Plaintiff was not disabled because he was capable of

performing his past relevant work as a Hot Bed Operator (Step Four). [AR 38-45]  On November 7, 2012, the SSA Appeals Council denied Plaintiff's request for reconsideration, making the denial final for the purpose of judicial review. [AR 12-17]  Plaintiff timely filed his complaint with this court seeking review of the SSA Commissioner's final decision.

## II.  FACTS

Plaintiff was born on May 16, 1949, and was 61 years old on his onset date and 63 years old at the time of the ALJ's decision. [AR 53, 135-36]  He has a college education. [AR 53, 194]  His  prior work was in steel mills. [AR 185, 239]  Plaintiff alleges that he became disabled on January 27, 2011 due to right knee problems, shoulder problems, and a sciatic nerve condition. [AR 193]

The medical records indicate that Plaintiff injured his knee during a 2010 work accident, and underwent right knee meniscal surgery. [AR 455]  Plaintiff was released from treatment by the worker compensation insurance doctor, Dr. Bradley, in January 2011, with the restriction that he only lift or carry less than 20 pounds, with no kneeling or crouching. [AR 454, 538]  Then, in March 2011, he underwent surgery for chronic subacromial bursitis on his left shoulder. [AR 506-7]  An independent medical examination by Dr. Nagamani, and a functional capacity assessment by Dr. LoGalbo, both in August 2011 also found Plaintiff to be a maximum medical improvement and concurred with Dr. Bradley's assessed light restrictions. [AR 529, 534-40]

At the hearing, Plaintiff testified that he could sit for an hour or two at a time, could stand for three hours at most, and could walk five blocks. [AR 58-59]  He could lift 20 to 25 pounds. [AR 59]  He indicated that he drives, teaches a bible study class and tries to do some stretching. [AR 62-3]  He also testified that his wife does most of the household chores, although he helps

with grocery shopping and doing the dishes and dusting occasionally, although using the vacuum cleaner hurts his shoulders. [AR 70-1]

### III.  LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct.  2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If he is, disability benefits are denied.  *See* 20 C.F.R. § 404.1520.  Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c).  If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, the claimant is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, the claimant is not disabled.  *See* 20 C.F.R. § 404.1520(e)&(f).  A claimant bears the burden of proving disability prior to the expiration of his insured status.  *Hawkins v. Chater*, 113 F.3d

1162, 1164 (10th Cir.1997). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

## IV. ALJ's RULING

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 27, 2011 (Step One). [AR 40] The ALJ next determined that Plaintiff had the severe impairments of: 1) arthritic changes and bursitis of the left shoulder, status-post surgical repair; and 2) right knee meniscal tear, status-post surgical repair (Step Two). [AR 40] However, because the ALJ determined that he did not have a impairment or combination of impairments that meets or equals a listed impairment (Step Three), the ALJ went on to assess Plaintiff's RFC. [AR 41]

The ALJ evaluated the evidence and found that Plaintiff retained the RFC to perform light work – as defined in 20 C.F.R. §404.1567(b) – with the following additional limitations: he should only occasionally push or pull with the right lower extremity and left upper extremity; he should avoid overhead reaching with the left upper extremity; he should never climb ladders, rope or scaffolds; and he should only occasionally crouch, kneel or crawl (Step Three). [AR 41] In light of Plaintiff's RFC, the ALJ found that he was able to perform his past relevant work as a Hot Bed Operator, as the job is generally performed, as this work does not require the performance of work activities precluded by his RFC (Step Four). [AR 44] Thus, the ALJ denied Plaintiff's application because he was not under a disability, as defined by the SSA, at Step Four of the sequential evaluation process. [AR 45] On review, the Appeals Council "found

no reason" to reconsider the ALJ's decision. [AR 12]

## V. STANDARD OF REVIEW

My review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)(*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. APPEAL

On appeal, Plaintiff does not challenge the ALJ's determination of his impairments or his RFC. Rather, Plaintiff contends that the ALJ erred when ruling that he was capable, at Step Four

5

of the sequential process, of performing his relevant past work as a Hot Bed Operator as it is customarily or generally performed in the national economy.

At the hearing, the ALJ asked Plaintiff about his past work. Plaintiff indicated that his background, beginning in 1970, was working as a CNC Machinist. [AR 57] In 1997 or 1998 he worked in the tool mill at the CF&I Steel Mill doing lathe machining – specifically, threading pipe. [AR 67] When the steel workers went on strike, he went back to school and then, in 2000-2001, worked as a CNC Machinist at Mico Manufacturing. [AR 67-8] In 2002 he went back to work at CF&I, after the strike ended, where he returned to the tool mill doing lathe machining for a year, and then worked in the rail mill until he was hurt on the job in 2010. [AR 69] Plaintiff described his job in the rail mill as part labor/part writing, and indicated that he performed the job as follows:

> You were collecting all the stock, and you put in on beds. ... Where the cranes would come and pick it up. You have to put strips on them. And you keep records. You have to keep records for that. . . . Walking all the time. [AR 69]

Upon questioning by his attorney, Plaintiff further described this job as:

> . . . it was putting strips on the rails. I had to cut rails test, which was three footers, out of each end of the - which is where - presently by - 150 pounds or more. So, I have to use . . . a jack . . . That you have to carry into a box. Not carrying, but you know, wheel them to that box. And so, then we have to collect all the data from the rails that would come to us, keep track of it. Record it. And we could watch the equipment, make sure that the equipment was functioning right. We walked and inspect. We grease. We would do greasing. [AR 72]

Plaintiff also testified that he would be on his feet almost 12 hours per day, except for lunch. [AR 73] Although it apparently was not clearly articulated, the transcript of the hearing indicates that Plaintiff defined this job as being a "Half-Bit" Operator. [AR 69]

6

Martin L. Rauer then testified as a vocational expert. [AR 126-27] Based on Plaintiff's testimony, and the record, Mr. Rauer testified that two job titles apply to Plaintiff's vocational background: 1) a Hot Bed Operator (Dictionary of Occupational Titles "DOT" Code: 613.685-034) which has a SVP of 4 and a light exertional requirement; and 2) a CNC (Computerized Numerical Control) Operator or, in this case, Machinist (DOT Code: 600.280-002) which has a SVP of 7 and a medium exertional requirement. [AR 75-6]  Mr. Rauer acknowledged that both jobs as actually performed by Plaintiff, based on his testimony, had a heavy to very heavy exertional requirement. [AR 75-6]  The ALJ asked Mr. Rauer to assume an individual with the same age, education and past work experience as Plaintiff, with the same assessed RFC (could only lift or carry up to 20 pounds frequently and 25 pounds occasionally; stand or walk, with normal breaks, for a total of six hours; sit, with normal breaks, for a total of more than six hours; could kneel, crawl, climb ladders, rope or scaffolds only occasionally; should avoid overhead reach with non-dominant upper extremities; and could push and pull, within the weight restrictions given, but that the right lower extremity and left/non-dominant upper extremity would be limited to only occasionally) and if that individual could return to his past work. [AR 76-7]  Mr. Rauer responded: "Your honor, in careful review of the parameters and descriptors in the DOT of the particular job, I believe it is, consistent with the hypothetical provided by the Court.  And that would be the hotbed operator, but not as actually performed." [AR 77]  He further indicated that, according to the DOT, it instead would be as usually performed in the general economy. [AR 77]

In her order, the ALJ noted that the vocational expert testified that Plaintiff's past work is described in the DOT as a Hot Bed Operator (DOT 613.685-034) "which is generally performed

at the light exertional level." [AR 44]  The ALJ further ruled that Plaintiff performed this work within the past fifteen years, he performed it long enough for him to learn the requirements of the job, and, according to Plaintiff's earnings record, his wages were consistent with a finding of substantial gainful activity. [AR 44] The ALJ's order ruled that:

> The vocational expert testified, and the [ALJ] concurs, that [Plaintiff] can return to his past relevant work as generally performed.  Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the DOT, though the undersigned has also relied upon his extensive experience in vocational evaluation, job placement, and job site evaluation.
>
> In the opinion of the [ALJ], the initial limitations propounded to the vocational expert, as discussed above in this decision and also set forth in the decisional findings, contain all inferences regarding [Plaintiff's] impairments and the degree of severity thereof that are raised by the objective and credible evidence of record. In response to the questions posed by the [ALJ], the vocational expert testified that [Plaintiff] could return to [his] past relevant work. [AR 44-5]

As a result, based on the testimony of the vocational expert Mr. Rauer, the ALJ found that Plaintiff has been capable of returning to his past relevant work and has not been under a disability, as defined by the SSA, at Step Four of the sequential evaluation. [AR 45]

A claimant capable of performing past relevant work is not disabled within the meaning of the Social Security Act.  20 C.F.R. §404.1520(e).  To prove that he cannot return to his past relevant work, a claimant must show that he can perform neither "[t]he actual functional demands and job duties of a particular past relevant job," nor "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993)(*quoting* Social Security Ruling (SSR) 82-61).  A claimant must demonstrate that he is unable to return to his former type of work, not just to his prior job. *Id.* at 1052.  Thus, when there is substantial

evidence in the record to indicate that a claimant may not be able to meet the requirements of his former work as he allegedly performed it, the ALJ may still find substantial evidence exists to indicate he can return to a past occupation as it is generally performed. *Id.*

It is not disputed that in this case Plaintiff provided sufficient evidence that he could not physically perform his past work as it was actually performed. Rather, Plaintiff asserts that the ALJ's determination that he could perform his past work as it is *generally* performed constituted error. Specifically, Plaintiff asserts that the ALJ failed to address the inconsistencies between his testimony about the job he performed and Mr. Rauer's testimony that his past work was classified as a Hot Bed Operator (DOT Code: 613.685-034) and as a CNC (Computerized Numerical Control) Operator/Machinist (DOT Code: 600.280-002).

In addressing this argument, I first reject the Plaintiff's assertion that the ALJ's failure to address the CNC Machinist classification identified by the vocational expert, and instead in concentrating solely on the Hot Bed Operator job, "reveals her underlying bias" toward Plaintiff. The law is clear that as long as a Plaintiff can perform any of his or her past relevant work positions, that is sufficient to support a finding at Step Four. *See e.g. Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013)(ruling that even if three of four jobs ALJ found the claimant capable of performing were not past relevant work, finding that claimant was capable of one past relevant work position was sufficient to support ALJ's determination that claimant was not disabled at Step Four). Although it appears that Plaintiff could not perform the job of a CNC Machinist as it is generally performed, the ALJ properly determined that Plaintiff could perform his past relevant work as a Hot Bed Operator, as discussed below.

In addition, to the extent that Plaintiff argues that the ALJ erred in failing to find that his prior work constitutes substantial gainful work that exists in the national economy, such requirement is not the law. *Barnhart v. Thomas*, 540 U.S. 20, 25, 29–30, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(ruling that the Commissioner need not establish that a prior job exists in significant numbers in the national economy to find that job constitutes prior relevant work); *see also Wells v. Colvin*, *supra*, 727 F.3d at 1075.

Lastly, I address Plaintiff's primary argument that the ALJ erred in determining that his past relevant work was properly classified as the position of Hot Bed Operator. Plaintiff cites to Social Security Ruling 00-04p which states that where there is an apparent unresolved conflict between the testimony of the vocational expert and that the DOT classification, the ALJ is required to elicit a reasonable explanation before relying on the vocational expert's testimony. *See* SSR 00-04p (noting that "[o]ccupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT"); *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)(holding that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point"); *see also Hayden v. Barnhart*, 374 F.3d 986, 990 (10th Cir. 2004).

Plaintiff argues that his description of his job duties and the DOT job classification of Hot Bed Operator involved "very significant differences" that were not resolved by the ALJ. In so doing, Plaintiff does not specifically assert that his past work at issue here was as a "Half-Bit

Operator" and not as a Hot Bed Operator as set forth in the hearing transcript. I note that my research has not revealed the existence of such job title either in the general national economy or contained in the DOT. And, furthermore, my review of the DOT job duties for a Hot Bed Operator under the DOT classification 613.685-034 are consistent with the duties as self-reported by Plaintiff in his testimony at the hearing. [AR 69-72]   The occupation of Hot Bed Operator, under DOT classification 613.685-034, is as follows:

> Tends equipment that transfers rolled steel shapes, such as blooms, billets, rails, and pipe from processing lines to cooling beds: Presses controls to raise roll stop, start conveyor, and position material opposite specified cooling bed. Pulls levers to start pusher straightedge and dog-chain (series of projections) that shoves material off conveyor line onto cooling bed. Moves controls of dog-chain to pull cooled material from bed onto cradle or transfer car. Records number and type of object cooled. May assist other workers in making roll and hot saw blade changes and in repairing, replacing, or adjusting mill equipment.

DOT classification 613.685-034, 3991 WL 684990. Plaintiff's hearing testimony was that his job was "collecting all the stock, and you put in on beds. . . . Where the cranes would come and pick it up. You have to put strips on them." [AR 69]  And that "it was putting strips on the rails. I had to cut rails test, . . .  I have to use . . . a jack . . .[to] wheel them to that box. And so, then we have to collect all the data from the rails that would come to us, keep track of it. . . . And we could watch the equipment, make sure that the equipment was functioning right. We walked and inspect." [AR 72]  In addition, Plaintiff completed a handwritten "Claimant's Work Background" form in April of 2012 that indicated he performed many "operator jobs" at the steel mill between 1976 and 2011, and that the duties performed included "recorder operator of hot bed and stocking bed," which involved taking "testing rail by cutting with torch to 32 inches. Put them on cord. Pull them to about 500 [inches] . . . set them on a table" and "stack rails" for crane

pick up, keeping records, greasing, cleaning and visually checking all equipment. [AR 239]  The SSA forms utilized as part of Plaintiff's application for benefits describes this position as follows: "I work with rails I cool them and process them down the line.  We stack them and make lifts.  We send them to the overhead cranes." [AR 186 - Work History Report Form SSA - 3369; AR 195 Disability Report - Adult Form SSA-3368]  Plaintiff's description of his job duties contained in the record was consistent with the DOT duties of a Hot Bed Operator.

Most importantly, the record consistently refers to Plaintiff's position at the time he stopped working as a Hot Bed Operator, and my review of the record reveals no reference to a "Half-Bit" Operator position.  For example, a Functional Capacity Evaluation ordered by the worker's compensation doctor designates Plaintiff's job title at the time he was hurt at his employment as "Hot Bed Operator." [AR 333, 367, 370]  The "Welcome" form at the worker's compensation medical provider indicates, via a handwritten fill-in-the-blank, that Plaintiff's occupation is "Hot Bed Operator" [AR 380], and a Medical History and Knee History form for Plaintiff's knee surgery also contains blanks for occupation that is filled in with "Hot Bed Operator." [AR 550, 552]  Plaintiff's initial and follow up visits with the worker's compensation medical providers likewise indicates that Plaintiff presents as a "61-year-old hotbed operator who had a roll fall down on his knee." [AR 398, see also 392, 386, 451, 455]  An Independent Medical Examination also sets forth Plaintiff's occupation as "Hotbed operator." [AR 534]  The SAA forms indicate that his only job title, in the past 15 years, was Hot Bed Operator at a rail mill. [AR 185, 194]  And, in addition, Plaintiff's initial Disability Determination – without any clarification in the record – defines his position at Hot Bed Operator. [AR 93]

Instead, the only difference identified by Plaintiff is that his past jobs at the steel mill included heavy exertional requirements, and the Hot Bed Operator classification required only a light exertional requirement. This difference was addressed by both the vocational expert and the ALJ as how the job was actually performed by Plaintiff, compared to how the job is generally performed. Therefore, because the hypothetical question posed to the vocational expert included the applicable age, education, work experience and RFC findings, the vocational expert's response constituted substantial evidence to support the ALJ's conclusion that claimant was capable of performing his past relevant work as performed in the national economy. *See Townsend v. Chater*, 91 F.3d 160 (10th Cir. 1996). The record clearly indicates that the ALJ properly utilized the opinion of the vocational expert along with all of the other evidence to make a step-four determination. *Id.*

Finally, because I have determined that the ALJ did not err at Step Four of the sequential process when concluding that Plaintiff is not disabled because he can perform his past relevant work as it is generally performed, I do not reach Plaintiff's contention that the ALJ erred at Step Five of the sequential process. 20 C.F.R. § 404.1520(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)(noting that "[i]f a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary"). As a result, I reject the Plaintiff's contention that the ALJ made Step Five findings at the hearing, but that those findings were not reflected in the written decision. The record is clear that to the extent the ALJ asked questions at the hearing that would be relevant if she went on to Step Five, it does not reveal that she made any such findings – binding or otherwise – on the record. [AR 78-81]

13

ACCORDINGLY,  I AFFIRM the SSA Commissioner's final order.


Dated: January   14  , 2016, in Denver, Colorado.

                                                 BY THE COURT:

                                             s/Lewis T. Babcock
                                          LEWIS T. BABCOCK, JUDGE